**John S. MAYS, Appellant,**

v.

**PIONEER LUMBER CORPORATION, a West Virginia corporation, Appellee.**

No. 72–2329.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1974.

Decided Aug. 22, 1974.

---

W. Dale Greene, Charleston, W. Va. (Paul E. Whitehead, Sr., Lynchburg, Va., on brief), for appellant.

George S. Sharp, Charleston, W. Va., for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

John Mays, a contract timber hauler, was seriously injured by two logs that fell or were pushed from his truck while he was unloading at Pioneer Lumber Company's sawmill in Frametown, West Virginia. He brought this suit under the diversity jurisdiction of the district court, alleging that the accident was caused by the negligence of one of Pioneer's employees. The first trial ended with a hung jury. The second jury returned a $40,000 verdict for Mays, but the district judge granted Pioneer's motion for judgment n. o. v. On Mays' appeal we reverse.

The only issue is whether there was sufficient evidence to support the jury's verdict that Pioneer's employee caused the accident. If, giving Mays the benefit of every legitimate inference in his favor, there was evidence upon which the jury could reasonably return a verdict for him, we must reverse the judgment below. Continental Ore Co. v. Union Carbide Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061 (4th Cir. 1969); Harner v. John McShain, Inc., 394 F.2d 480 (4th Cir. 1968); Chandler v. Aero Mayflower Transit Co., 374 F.2d 129 (4th Cir. 1967).

At the time of the accident Mays' truck was parked on a slope above the sawmill. The bed of the truck was slanted sideways, with the driver's side

lower than the other. In accordance with the usual unloading procedure, Mays intended to release the logs and let them roll downhill. A log lift (large relative of a fork lift, with an enclosed cab, bigger than truck-size wheels, and a hydraulic arm long enough to reach completely over a loaded truck and grasp logs) would assist. Mays' truck bed was equipped with vertical standards on the downhill side that would swing away, freeing the logs, when he released trip chains on the opposite side. Working on the uphill side of the truck, Mays released the rear standard but had difficulty getting the trip chain for the front standard out of its slot. While he was trying to pry it loose, the log lift moved around to the downhill side of the truck. Then, Mays testified, he felt the log lift ram the truck. Two logs on top of the load were thrown *uphill* by the impact. The first grazed Mays' shoulder as it flew over his head, the second landed on him, amputating his right leg. Mays testified that he immediately looked under the truck and saw the log lift, with its wheel "sitting right tight against the truck." App. 88.

Mays' version of the accident was contradicted by the log lift operator, who testified that his machine did not touch the truck or the logs, and by several employees who had witnessed the accident from distances between 50 and 375 feet.[1] The latter witnesses testified with varying degrees of assurance that the log lift did not strike the truck. Three said they were watching the unloading process and did not see a collision. Two did not see the accident, but said that when they realized Mays had been hurt, they saw the log lift ten feet or more from the truck, standing still.

■ Although the conflict between Mays' testimony and that of the other witnesses seemed to present a classic question for the jury, the district judge held there was no evidence that a collision had occurred. Because Mays admitted he could not see the log lift strike the truck, the judge concluded that Mays was "unable to state whether there had been a collision." Thus, he said, plaintiff's case rested entirely on an inference, insufficient to support a verdict under a rule that "where plaintiff's case is based upon an inference or inferences, he cannot prevail where there is proof of undisputed facts inconsistent with such inferences." Mem.Op. at 5. This rule was derived from Pennsylvania R.R. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1933), where the Court disregarded an inference "in the face of the positive and otherwise uncontradicted testimony of unimpeached witnesses consistent with the facts actually proved, from which testimony it affirmatively appears that the fact sought to be inferred did not exist." *Id.* at 341, 53 S.Ct. at 394.[2] If this passage is taken to mean that an inference can never sustain a verdict against contrary testimony, we think it is inconsistent with the recognized rule that on a motion for directed verdict the court must credit the nonmoving party with all reasonable inferences. Continental Ore Co. v. Union Carbide Corp., *supra*; Burcham v. J. P. Stevens & Co., 209 F. 2d 35 (4th Cir. 1954). *See* Musgrave v. Union Carbide Corp., 493 F.2d 224 (7th Cir. 1974). If it means only that the nonmoving party is not entitled to inferences that are proved impossible by evidence the jury is not free to disregard, the rule may still be viable, *see, e. g.,* Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958); *cf.* Brown v. Ford Motor Co., 479 F.2d

---

1. One of these witnesses was not an employee but Mays' boss, one Robert Reed, who supplied logs under contract with Pioneer. Mays in turn worked under contract with Reed.

2. The district court also cited the holding in *Chamberlain* that when proven facts give equal support to conflicting inferences, the verdict must go against the party who has the burden of proof. We have held that this rule was rejected by Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). *See* Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061, 1066 & n. 14 (4th Cir. 1969).

521 (5th Cir. 1973), but would not apply to this case.

■ Vision is not the only sense that can supply direct evidence of an occurrence. Mays testified that he felt the impact, describing it as an "awful jar that almost pushed the truck up the hill." App. 122. The jury was entitled to believe that Mays, with 14 years experience at hauling logs, could tell the difference between an impact and the recoil caused by logs falling of their own accord.[3] Because Mays offered direct evidence about the mishap and described his own perception of it, the case is unlike Herron v. Maryland Casualty Co., 347 F.2d 357 (5th Cir. 1965), and Cater v. Gordon Transport, Inc., 390 F.2d 44 (5th Cir.), cert. denied, 392 U.S. 927, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968), on which the district court relied. Moreover, the evidence does not exclude the hypothesis that the log lift arm might have jarred or pushed the logs uphill even though the machine itself did not collide with the truck. The log lift is an enormous vehicle fully capable of reaching and moving the top logs without otherwise contacting the truck.

Nor was the district judge entitled to discard Mays' testimony because it differed in some respects from his testimony at the first trial.[4] This was solely a question of weight and credibility, and Pioneer's attorney cross-examined Mays about the discrepancies.

For these reasons, Mays' testimony was enough to require submission to the jury. The weight and volume of evidence against him did no more than create an issue of fact for the jury's resolution. We must therefore reverse the judgment n. o. v. entered for Pioneer.

The harder problem is what to do about Pioneer's alternative motion below for a new trial. The district judge declined to rule on the alternative motion, reasoning that Fed.R.Civ.P. 50(c) was inapplicable because Pioneer's only ground for a new trial was the same as that advanced for judgment n. o. v.— that the verdict was contrary to the greater weight of the evidence. We agree with the district judge that there is some degree of overlapping in Rule 50(c). Since it is clear that a district judge does not have the right to substitute his own notion of what the verdict should be for that of the jury, it would seem that if his decision to grant a motion for judgment n. o. v. is wrong, then a collateral decision to alternatively grant a motion for a new trial would also likely be wrong. The adjectives vary and the test is theoretically different, but certainly there is no clear bright line between judgment n. o. v. on the ground that the verdict is contrary to the weight of the evidence and the granting of a motion for a new trial on the same ground. There is much to be said for the district judge's viewpoint that the larger embraces the smaller, and that it is unlikely that he can be wrong in granting judgment n. o. v. and right in granting a motion for a new trial on the same ground.

■ But Rule 50(c) is perfectly clear. By its very terms the trial judge is commanded to also rule on the motion for a new trial, even though the granting of it is conditional upon his judgment being reversed in respect to the granting of judgment n. o. v. Despite strong and persuasive criticism of the rule, see, e. g., C. Wright, Handbook of the Law of Federal Courts § 95, at 427 (2d ed. 1970), the district judge was nevertheless bound by it, and his failure to follow the rule is error.

3. Pioneer's alternative theory of the accident to explain the inherent difficulty of how logs can roll uphill is that the logs pivoted around the front standard when the rear standard was tripped, throwing the top logs off. This hypothesis receives no support from the testimony of the log lift operator, who said he did not think the bottom logs moved at all. App. 202–03.

4. The primary difference was that at the first trial Mays said he saw the log lift 6 to 8 feet from the truck, while at the second trial he said it was "sitting right tight against the truck."

■ There is authority for the proposition that we now have no alternative other than to remand either for a third new trial or for the district judge to consider anew whether to grant another trial. *See* Casper v. Barber & Ross Co., 109 U.S.App.D.C. 395, 288 F.2d 379, 385 (1961) (Miller, J., concurring and dissenting). But the better viewpoint, it seems to us, is that suggested by Professor Moore, who points out that where the judgment n. o. v. is reversed and the trial court has alternatively granted the motion for a new trial, the case will ordinarily be remanded for a new trial, "[b]ut the courts of appeals have authority to order 'otherwise.'" 5A Moore's Federal Practice § 50.14, at p. 2382 (2d ed. 1974). If the court of appeals may reverse the *grant* of a new trial and order entry of judgment on the verdict, and it seems settled that we may do so, *see, e. g.,* Powell v. Lititz Mut. Ins. Co., 419 F.2d 62 (5th Cir. 1969); Berner v. British Commonwealth Pacific Airlines, Inc., 346 F.2d 532 (2d Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966), it would seem absurd to hold that the remedy is circumscribed by the failure of the district judge to follow the command of Rule 50(c) to rule on the motion for a new trial. It is getting things a bit backwards to exposit the rule to mean that the granting of a new trial may be reviewed and reversed but that the failure to either grant or deny a new trial compels remand to allow the district judge, in his unappealable discretion, to grant or deny yet another trial. It could not have been intended that a district judge by failing to comply with Rule 50(c) can enhance his power and curtail that of the appellate court. It is not surprising that Rule 50(c) is silent as to the effect of the failure of the district judge to follow the mandate of the rule. Rules seldom contemplate what will happen if they are disregarded.

In a day of trial court congestion and repetitive pleas for judicial efficiency, it would be absurd to hold that we may not grant similar relief because of the error of the district judge in failing to either grant or refuse the motion for a new trial. Vera Cruz v. Chesapeake & O. R. R., 312 F.2d 330, 332 (7th Cir.), cert. denied, 375 U.S. 813, 84 S.Ct. 44, 11 L. Ed.2d 49 (1963). *See* Powell v. Lititz Mut. Ins. Co., 419 F.2d 62 (5th Cir. 1969).

We think that no useful purpose would be served by remanding to the district judge to entertain and decide a renewed motion for a new trial. There have already been two trials, the first resulting in a hung jury and the second in a verdict for the plaintiff. Two trials are enough, and indeed, all that the judicial system can presently afford. We therefore reverse and remand to the district court with instructions to reinstate the verdict and to enter judgment upon it.

Reversed.