ANHEUSER–BUSCH, INCORPORATED,
Plaintiff–Appellee,

v.

L & L WINGS, INCORPORATED,
Defendant–Appellant,

and

Venture Marketing, Incorporated;
Sunburst Screen Printing,
Defendants.

ANHEUSER–BUSCH, INCORPORATED,
Plaintiff–Appellee,

v.

VENTURE MARKETING,
INCORPORATED, Defendant–Appellant,

and

L & L Wings, Incorporated; Sunburst
Screen Printing, Defendants.

Nos. 91–3039, 91–3043.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1991.

Decided April 10, 1992.

**317**

Cort Flint, Jr., Cort Flint, P.A., Greenville, S.C., argued, for defendants-appellants; Peter D. Hyman, The Hyman Law Firm, Florence, S.C., for defendant-appellant L & L Wings; Robert J. Reeves, Collins & Lacy, Columbia, S.C., for defendant-appellant Venture Marketing, on brief.

Floyd A. Gibson, Bell, Seltzer, Park & Gibson, Charlotte, N.C., argued, for plaintiff-appellee; John H. Thomas, William M. Atkinson, Charlotte, N.C., John E. Cuttino, Turner, Padget, Graham & Laney, Columbia, S.C., Richard W. Renner, Anheuser–Busch, Inc., St. Louis, Mo., on brief.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.

OPINION

WILKINSON, Circuit Judge:

In this case, plaintiff Anheuser–Busch sued defendants for selling souvenir T-shirts that plaintiff claimed infringed its Budweiser beer trademarks. The jury returned a verdict in favor of defendants, finding that defendants' T-shirt design did not create a likelihood of consumer confusion, but the district judge granted plaintiff's motion for judgment notwithstanding the verdict. We reverse. The record reveals sufficient differences between the T-shirt design and plaintiff's trademarks to permit the jury to conclude that consumer confusion was unlikely. Accordingly, we think the district judge improperly substituted his judgment as to likelihood of confusion for that of the jury, and we remand with instructions to reinstate the jury verdict in favor of defendants.

### I.

In 1987, Michael Berard was a student at the University of North Carolina at Chapel Hill. In order to supplement his income, Berard decided to go into the business of designing and selling T-shirts. During 1987, Berard devised a T-shirt design that he planned to sell as a souvenir of Myrtle Beach. That design depicted a beer can with a red, white and blue label. The words on the can did not refer to beer, however, but only to Myrtle Beach.

In 1988, Berard incorporated Venture Marketing, Inc., (Venture) in order to manufacture and wholesale his T-shirts. Venture marketed the Myrtle Beach T-shirts through L & L Wings, Inc., (Wings) which operates a number of retail beach stores at Myrtle Beach, South Carolina and at other beaches. Wings purchased over 20,000 shirts from Venture.[1]

In 1989 Anheuser–Busch, Inc., brought this trademark infringement action against Venture and Wings. Anheuser–Busch alleged that the T-shirt design was confusingly similar to the Budweiser beer label, a

1. Venture subsequently marketed a series of T-shirts that incorporated the same beer can design as the Myrtle Beach T-shirts, but that substituted the names of other beaches for Myrtle Beach. Those T-shirts are at issue in this case as well, but for the sake of simplicity we refer here only to the Myrtle Beach T-shirt.

registered trademark which Anheuser-Busch had used on its own line of T-shirts and other apparel. Anheuser–Busch complained that the Myrtle Beach T-shirt infringed its trademarks because consumers were likely to believe the T-shirt was sold or sponsored by Anheuser–Busch. The case was tried before a jury for three days, and the jury returned a verdict in favor of the defendants. Anheuser–Busch filed a motion for j.n.o.v. or, in the alternative, for a new trial. After briefing and argument, the district judge granted the j.n.o.v. motion, holding that the evidence before the jury permitted only one reasonable conclusion: that the T-shirt created a likelihood of confusion and thus infringed Anheuser–Busch's trademarks. Accordingly, the district court entered judgment on the question of liability in favor of Anheuser–Busch, and took the motion for a new trial under advisement pending appeal. Venture and Wings then brought this appeal.

## II.

■ Under the Lanham Act, a registered trademark holder has a right to prevent another's use of a trademark that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). *See Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir.1991). In other words, an unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 293 (3d Cir.1991); 2 J. McCarthy, *Trademarks and Unfair Competition* § 23:28 (1984). This pivotal trademark issue is particularly amenable to resolution by a jury for two reasons. First, the jury, which represents a cross-section of consumers, is well-suited to evaluating whether an "ordinary consumer" would likely be confused. Second, the likelihood of consumer confusion is an "inherently factual" issue that depends on the unique facts and circumstances of each case. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n. 5 (9th Cir.1985). Likelihood of confusion is "frequently a fairly disputed issue of fact on which rea-

sonable minds may differ," *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir.1983), and has long been recognized to be "a matter of varying human reactions to situations incapable of exact appraisement." *Colburn v. Puritan Mills, Inc.*, 108 F.2d 377, 378 (7th Cir.1939).

■ A district judge may overturn a jury verdict on a motion for j.n.o.v. only if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for [the prevailing] party." Fed.R.Civ.P. 50(a)(1). In making this determination, the judge is not to weigh the evidence or appraise the credibility of witnesses, but must view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor. *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 107 (4th Cir.1974). Our review of the district court's action is de novo. Here we believe the district judge improperly assumed the jury's role of determining whether an ordinary consumer would likely be confused by the T-shirt, and we reverse the court's entry of j.n.o.v.

■ The jury was entitled to conclude that consumer confusion was unlikely based on a number of conspicuous differences between the T-shirt design and the Budweiser label. First, the T-shirt design makes no reference of any sort to Anheuser–Busch or Budweiser. By contrast, the Budweiser label displays a number of prominent indications of the product's source or sponsor: the name "Budweiser" flanked on either side by the word "genuine"; the geographic designation "Anheuser–Busch, Inc., St. Louis, Mo."; the letters "AB" for Anheuser–Busch; and the Anheuser–Busch trademark depicting an eagle in the middle of the letter "A." With respect to all of these, the T-shirt design either omits them entirely or replaces them with references to the beach. The T-shirt design replaces the Budweiser name with the words "Myrtle Beach"; substitutes the words "Myrtle Beach, S.C." for "Anheuser–Busch, Inc., St. Louis, Mo."; and replaces the letters "AB" with "SC." In addition, the T-shirt eliminates the Anheu-

ser–Busch trademark "A" and omits the word "genuine."

Second, the T-shirt replaces the Budweiser label's descriptions of the beer with analogous language descriptive of the beach. The Budweiser label reads as follows:

> This is the famous Budweiser beer. We know of no brand produced by any other brewer which costs so much to brew and age. Our exclusive Beechwood Aging produces a taste, a smoothness, and a drinkability you will find in no other beer at any price.

On the Venture Marketing T-shirt design, these sentences are replaced with a description of the beach:

> This is the famous beach of Myrtle Beach, S.C. We know of no other resort in any state which lays claim to such a rich history. The unspoiled beaches, natural beauty, and southern hospitality compose a mixture you will find on no other beach in any state.

Similarly, the descriptive words at the bottom of the Budweiser label—announcing that the beer is "Brewed by our original process from the Choicest Hops, Rice and Best Barley Malt"—are replaced in the T-shirt design with words proclaiming that "Myrtle Beach contains the Choicest Surf, Sun, and Sand."

Third, the T-shirt design incorporates its own beach slogans in place of the Budweiser beer slogans. The Budweiser label includes the slogan "King of Beers" under the Budweiser name. On the T-shirt, this is replaced with the words "King of Beaches." In addition, the T-shirt mimics another Budweiser slogan, "This Bud's for You," with its own slogan, "This Beach is for You."

Together, we think these differences are sufficient at least to create a reasonable jury question on the issue of likelihood of confusion. The jury had the opportunity to visually examine the T-shirt and to compare it with the Anheuser–Busch trademarks. We cannot say that the jury's conclusion was the only one it could have reached, but neither are we able to say that its verdict was unreasonable. In this re-

gard, our dissenting brother faithfully presents Anheuser–Busch's side of the jury argument. To believe that the jury should have heard this argument is not to say that the jury was required to accept it.

### III.

Anheuser–Busch suggests two reasons why we should disregard the jury verdict in this case. First, it contends that a judgment in its favor was compelled because the T-shirt incorporated a beer label design that intentionally imitated the non-verbal portion of the Budweiser label. At trial, Michael Berard admitted that he had patterned the T-shirt's beer label after the basic Budweiser format, and it is undisputed that he was successful in that endeavor. In Anheuser–Busch's view, this similarity of format by itself infringes its registered trademark in the Budweiser beer label design.

We disagree. Anheuser–Busch would have us isolate the non-verbal portion of the T-shirt design, while ignoring the substantial verbal differences that set it apart from the Budweiser label. Under the Lanham Act, however, a holder of a registered trademark is entitled to protection only from uses of the mark that create a likelihood of consumer confusion. 15 U.S.C. § 1114(1)(a). The statutory standard for infringement does not depend on how closely a fragment of a given use duplicates the trademark, but on whether the use in its entirety creates a likelihood of confusion. In making that determination, we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer; we must look not only at the portion of the T-shirt that duplicates the Budweiser label design, but at the T-shirt as a whole as sold in the marketplace. *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir.1991); *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (C.C.P.A.1981). The jury examined the T-shirt as a whole and reasonably concluded that consumer confusion was unlikely.

Second, Anheuser–Busch argues that the jury verdict must be overturned because there was insufficient evidence to support it under the factors announced in *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). In that case, this court identified seven factors that have been considered in determining whether there is a likelihood of confusion: the strength of the plaintiff's mark, the degree of similarity between the two marks, the similarity of the goods they identify, the similarity of the facilities used in the businesses, the similarity of the advertising, the defendant's intent, and the presence of actual confusion. *Id.* The district judge evaluated the evidence presented to the jury under these seven factors, and found that although there was no evidence of actual confusion, other factors favored the plaintiff: plaintiff's trademarks were unquestionably strong, the T-shirt design was similar to the Budweiser label, the goods the marks identify were identical, and the facilities and advertising used by the parties were similar.

We believe, however, that the district judge misconstrued the nature of the *Pizzeria Uno* factors in overturning the jury's verdict. The "factors" announced in *Pizzeria Uno* are not meant to be a "rigid formula" for infringement. *Murphy v. Provident Mut. Life Ins. Co.,* 923 F.2d 923, 928 (2d Cir.1990). *See also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986). Rather, the *Pizzeria Uno* factors are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion. As this circuit recognized in *Pizzeria Uno,* not all of the factors are of equal importance, nor are they always relevant in any given case. 747 F.2d at 1527.

In this case, we think the jury was entitled to give decisive weight to the predominant differences between the T-shirt design and the Budweiser label. Where there is no evidence of actual confusion and a jury reasonably concludes that there is no likelihood of confusion because of the differences between the marks, consideration of the remaining *Pizzeria Uno* factors is un-

necessary. We recognize, of course, that the likelihood of consumer confusion may be affected not only by the intrinsic similarity of two trademarks, but also by certain extrinsic factors such as the strength of the plaintiff's mark and the similarity of the products, sales outlets, and advertising. At the same time, however, these extrinsic factors are insufficient by themselves to establish likelihood of confusion absent some threshold of intrinsic similarity between the plaintiff's trademark and the defendant's alleged infringement. *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.,* 656 F.2d 186, 189 (5th Cir.1981). The Lanham Act was obviously not intended to create a barrier to competition by preventing the use of distinguishable trademarks to market similar goods through identical channels. *See Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 300–01 (9th Cir.1979) (trademarks are designed to protect consumers from being misled, not to "further or perpetuate product monopolies"). Indeed, the marketing of commodities would be impaired if these external factors were assigned controlling weight in cases where the subject trademarks are readily distinguishable. In this case, the extrinsic factors—including the fact that the T-shirt competed with Anheuser–Busch's own product line—were appropriate for the jury to consider. We think, however, that there were sufficient intrinsic differences between the T-shirt and the Anheuser–Busch trademarks to permit a reasonable jury to find that consumer confusion was unlikely irrespective of the evidence under those extrinsic considerations.

In short, the most important factor in this particular case was whether plaintiff's mark and defendant's T-shirt design looked alike in the eyes of the ordinary consumer. We think the jury was uniquely positioned to make the critical determination in that regard.

## IV.

At trial, Michael Berard testified that his intent in creating the T-shirt design was to parody the Budweiser beer label.

The crux of his defense was that the T-shirt—as parody—was especially unlikely to create confusion in the minds of ordinary consumers. We think that a reasonable jury could find that the T-shirt was readily recognizable as parody, and that such a finding provides additional support for the jury's verdict.

Anheuser–Busch, however, insists that appellants' T-shirt design has no element of parody because its purpose was to make money and not to make any commentary about Budweiser beer. We disagree. The T-shirt design fits a conventional definition of trademark parody—it is "a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir.1987). The T-shirt design mimics the characteristic turns of phrase on the Budweiser label by applying them to the beach: the "taste," "smoothness," and "drinkability" found "in no other beer at any price" become the "unspoiled beaches, natural beauty, and southern hospitality" composing a "mixture you will find on no other beach in any state"; the beer's ingredients—the "Choicest Hops, Rice and Best Barley Malt"—are imitated by the "Choicest Surf, Sun, and Sand"; "King of Beers" is changed to "King of Beaches"; and "This Bud's For You" is mimicked by "This Beach is For You." Berard testified that this "irreverent representation" was calculated to parody or satirize the Budweiser label, and we think the jury was entitled to agree that it had that effect.[2]

The district court unfortunately ignored the issue of parody in evaluating the sufficiency of the evidence to support the jury's verdict. In so doing, the judge failed to recognize that the multi-factored inquiry under *Pizzeria Uno* "is at best awkward in the context of parody." *Cliffs Notes*, 886 F.2d at 495 n. 3. Outside the context of parody, for example, intentional similarities

between trademarks may lead to a presumption of a likelihood of confusion. *Osem Food Industries Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 164–65 (4th Cir. 1990). In cases of parody, however, courts have concluded that intentional similarity is unavoidable: "[T]he keystone of parody is imitation. It is hard to imagine, for example, a successful parody of Time magazine that did not reproduce Time's trademarked red border." *Cliffs Notes*, 886 F.2d at 494. *See also Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir.1987).

Courts have further recognized that although parody necessarily evokes the original trademark, effective parody also diminishes any risk of consumer confusion. *See Jordache*, 828 F.2d at 1486; *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir.1984). Successful trademark takeoffs dispel consumer confusion by conveying just enough of the original design to allow the consumer to appreciate the point of the parody. *Cliffs Notes*, 886 F.2d at 494. Here the T-shirt necessarily adopts the basic format of the Budweiser label, but we think the similarities merely convey the message that the T-shirt is a parody of the original, and are not indicative of consumer confusion. The substantial differences detailed above would at least permit a jury to conclude that the T-shirt design was nothing more than a commentary on the pleasures of beach life that effectively parodied the Budweiser label but could hardly be confused with it.

■ Anheuser–Busch would also have us give substantial weight to defendants' intent to draw on the "commercial magnetism" of the Budweiser label. It is true that appellants' primary motive in creating the T-shirt design was to make a profit, but the relevant intent in trademark cases is not merely an intent to profit, which would condemn all commercial parody, but an "intent to confuse the buying public." *Pizze-*

---

**2.** Some courts have held that trademark parody is entitled to First Amendment protection. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 493 (2d Cir.1989); *L.L. Bean*, 811 F.2d at 33–34. Given our deci-sion to reinstate the jury verdict under the statutory standard, however, we have no occasion to reach defendants' contention that the First Amendment provides an independent basis for ruling in their favor.

*ria Uno,* 747 F.2d at 1535. Ordinarily, an intent to profit from the original is the same thing as an intent to confuse—the infringer benefits only if consumers confuse his trademark with the original. But that equation does not hold in the context of parody. An alleged infringer may intend to benefit from the original trademark without ever intending or causing consumer confusion:

> In one sense, a parody is an attempt "to derive benefit from the reputation" of the owner of the mark, if only because no parody could be made without the initial mark. The benefit to the one making the parody, however, arises from the humorous association, not from public confusion as to the source of the marks. A parody relies upon a difference from the original mark, presumably a humorous difference, in order to produce its desired effect.

*Jordache,* 828 F.2d at 1486, quoting *Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417, 431 (5th Cir.1984).

An intent to parody, then, is an intent to benefit from the original trademark, but such an intent is not necessarily probative of a likelihood of consumer confusion. We cannot assume that the commercial success of the Myrtle Beach T-shirt resulted from consumer confusion; consumers may have been moved to buy the T-shirt by the simple fact that they were amused by the cleverness of its design.

Throughout this litigation, Anheuser–Busch has invited the court to place dispositive weight upon factors which are at best proxies for the ultimate statutory standard—whether the T-shirt is "likely to cause confusion." 15 U.S.C. § 1114(1)(a). Similarity of format and intent to profit, however, are not precise equivalents of the dispositive statutory language. The jury was entitled to find that the statutory standard did not condemn appellants' humorous takeoff on the Budweiser label. The purpose of the Lanham Act is to eliminate consumer confusion, not to banish all attempts at poking fun or eliciting amusement. *Elsmere Music, Inc. v. National Broadcasting Co.,* 623 F.2d 252, 253 (2d Cir.1980). The statute is designed to protect consumers from product misinformation, not to deprive the commercial world of all humor and levity. In this case, the ordinary consumers who served as jurors reasonably concluded that the T-shirt eliminated any risk of confusion, and we refuse to interfere with that verdict.

## V.

Our dissenting brother's standard is so broad that it would banish virtually all attempts at humorous takeoffs on trademarks as a matter of law. The dissent would establish a zone of immunity for any trademark that could lay claim to strength and familiarity—the very marks for which parody is most likely. Its view is that almost any imitation of design, no matter how humorous or distinct the accompanying lyrics or verbiage, will run afoul of the Lanham Act. We think the evident tensions in the trademark field between commercial piracy and discouragement of competition, as well as between permissible parody and impermissible imitation, are often best resolved by a jury on a case-by-case basis. The balance established by the Lanham Act risks serious disturbance when courts too readily assume the roles of ordinary consumers and interpose sweeping pronouncements of law.

In sum, this was a jury verdict that should have been sustained. We thus reverse the district court's entry of j.n.o.v. and instruct it to reinstate the jury verdict.[3]

REVERSED.

---

**3.** The district court held under advisement appellee's motion for a new trial, and in so doing contravened the express mandate of Rule 50 of the Federal Rules of Civil Procedure. When alternative motions for j.n.o.v. and for a new trial are made, Rule 50(c)(1) requires that the district court rule on both of them. The policy behind this directive is clear: "If the court grants judgment notwithstanding the verdict and fails to act on the alternative motion for a new trial, litigation will be needlessly protracted should the appellate court find that the grant of judgment was erroneous." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2539, at 610 (1971). In order to avoid such protracted litigation, this circuit has permitted the appel-

late dismissal of new trial motions in cases where the district judge failed to comply with the Rule 50(c) requirement to rule on the motion. *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 110 (4th Cir.1974). In *Mays*, this court reversed the district court's entry of j.n.o.v. and instructed the district court to reinstate the jury verdict based on its conclusion that "no useful purpose would be served by remanding." *Id.*

We think the course prescribed in *Mays* is appropriate here. We see no purpose in remanding where our grounds for reinstating the jury verdict necessarily comprehend the essence of appellee's new trial motion. The evident thrust of both parties' arguments is that either judgment is warranted for Anheuser–Busch as a matter of law, or that the jury verdict should be upheld. For the reasons noted above, the verdict of the jury was not contrary to the clear weight of the evidence and the instructions under which the case was submitted were in their totality unexceptionable. The trial ran for three days and both parties had every opportunity to place their case before the factfinder. A new trial here would therefore not be warranted, and the case against defendants must be dismissed.

APPENDIX
T–Shirt Design

12 FL OZ. (355 ml)

# Myrtle Beach

KING OF BEACHES

*Myrtle Beach contains the Choicest Surf, Sun, and Sand*

*Myrtle Beach, S.C.*

## This Beach is for You!

Venture Marketing, Inc.
1987 ALL RIGHTS RESERVED

---

POWELL, Associate Justice, dissenting:

The issue presented in this case is whether defendants' T-shirts infringe federally registered trademarks owned by Anheuser–Busch. A jury found no infringement. But the district court, finding insufficient evidence to support the jury's decision, entered judgment notwithstanding the ver-

dict. The court today reverses, reinstating the jury verdict.

The court rests its decision on three related grounds: (i) the jury's finding of no likelihood of confusion is supported by differences between defendants' T-shirt design and the Budweiser label; (ii) defendants' T-shirt design withstands scrutiny under *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir.1984); and (iii) defendants' parody defense also supports the verdict. I disagree with this assessment of the evidence and in certain respects with the characterization of the law that precedes it.[1]

## I

Few can disclaim familiarity with the Budweiser label design.[2] It has been used by Anheuser–Busch as a trademark on beer cans since 1876 and on clothing since 1967. It has been the subject of extensive advertising. And it has been used to market several thousand products, including T-shirts sold in seaside stores. In short, it is, as the district court observed, "one of the strongest marks in this country, indeed in the world."

Not surprisingly, defendants concede that the strength of the trademark, the "paramount" consideration in the seven-factor analysis, *Pizzeria Uno*, 747 F.2d at 1527, favors Anheuser–Busch. Defendants further admit that three other factors support Anheuser–Busch's claim: (a) the sim-

ilarity of the parties' goods (T-shirts),[3] (b) the similarity of the outlets where such goods are sold (beach-front stores), and (c) the similarity of the parties' advertising.

That leaves a trio of considerations to support the jury verdict in favor of defendants—actual confusion, defendants' intent, and design similarities. I will consider each in turn.

Agreeing with the district court, the court in this case finds no proof of actual confusion between the Budweiser label design and defendants' T-shirt. That is a mistaken view. Anheuser–Busch did present evidence of actual confusion. Michael Kroshinsky, one of defendant Wings' wholesale purchasers, testified that his initial reaction to the T-shirt was that it "was a copy of a Budweiser shirt." Such proof is "substantial evidence" of likely confusion, *AMP Inc. v. Foy*, 540 F.2d 1181, 1186 (4th Cir.1976), particularly when it is a professional buyer who has been confused. This consideration thus also helps Anheuser–Busch.[4]

There also was evidence of intentional copying. Michael Berard, the founder of Venture Marketing and the designer of defendants' T-shirt, admitted that he intended to copy the Budweiser label design. This evidence creates a presumption of likelihood of confusion. *Osem Food Indus., Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 165 (4th Cir.1990). The court does not dis-

---

**1.** I doubt that the likelihood-of-confusion determination is any more "amenable to resolution by a jury," as the court suggests, than other questions of fact. It may be less so. Some courts of appeals have concluded that this determination is a legal one. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 495 (2d Cir.1989); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988). Although this circuit has said that the question is factual, *see Durox Co. v. Duron Paint Mfg Co.*, 320 F.2d 882, 884 (4th Cir.1963), there is no reason to conclude that the jury's resolution deserves special deference.

**2.** At issue primarily is defendants' use of the non-verbal Budweiser label design, a separately registered trademark. Other protected marks also adorn Anheuser–Busch products, such as the trade name itself, "Budweiser," which defendants have not appropriated, and a variety of slogans (i.e., "This Bud's For You," "The King of Beers"), which defendants allegedly also have appropriated. My focus is on defendants' infringement of the label design.

**3.** This concession also is significant. The similarity of products suggests not only that Anheuser–Busch may lose revenue for each sale by defendants but also, and perhaps more importantly, that a likelihood of confusion is apt to follow. Cf. *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928) ("unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful").

**4.** The argument that Mr. Kroshinsky's testimony is not indicative of actual confusion is unpersuasive. Moreover, this argument does not present an obstacle to Anheuser–Busch's claim. The Lanham Act affords protection if confusion is "likely." Trademark owners may invoke the statute—and prevail under it—without establishing actual confusion. *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).

cuss this factor in its application of *Pizzeria Uno*. Instead, in Part IV of the opinion, it suggests that an exception to the presumption should apply when a defendant asserts that he intended to parody a particular trademark. I am not persuaded that such an exception is applicable here. It is true that parody requires a degree of imitation. But the burden of disproving infringement should rest on one who intentionally uses another's trademark—even as parody. If the parody is strong, the burden will be light. If it is not, then a heavy burden is appropriate since the junior user is likely to benefit from its continuing affiliation with the "drawing power," *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942), of the senior user's mark. In short, I would not jettison this presumption in the parody context, and would find that this consideration favors Anheuser–Busch.

## II

The court today relies, as it must, on the final factor—the similarity between the senior user's mark and the junior user's design. It gives "decisive weight" to the "predominant differences" between the T-shirt design and Anheuser–Busch's mark. In emphasizing this consideration, the court extends precedent and ignores the facts of this case.

### A

To be sure, the court is correct in the abstract: that is, design differences can be determinative. "[S]ome threshold of intrinsic similarity" between marks is required before the "extrinsic" factors come into play. But I know of no precedent that allows conclusive weight to be given to this factor when a party has borrowed a distinctive mark, without making any discernible changes to it, and placed that mark on identical products marketed through identical commercial channels.

### B

Even if as a legal matter the *Pizzeria Uno* analysis could be configured in such a manner, the evidentiary foundation for such an analysis is lacking here.[5] In the court's view, what sustains the imitation are the words added to the Budweiser design. These words dispel confusion, the court maintains, in two ways: (i) the words are different from the language ordinarily appearing on a Budweiser beer can (i.e., "Myrtle Beach" is substituted for "Budweiser") and (ii) the words parody the Budweiser slogans and beer can (i.e., "This Beach Is For You" is substituted for "This Bud Is For You"). Neither argument is persuasive.

#### 1

The court begins its "different words" analysis by emphasizing that defendants' T-shirt design makes "no reference of any sort to Anheuser–Busch or Budweiser." That by itself is of no importance. It is enough that the T-shirt adopts the Budweiser label design. This symbol needs no verbal cue to call Budweiser to mind. The symbol characterizes the name as much as the name does the symbol. It also is a separately registered trademark. For that reason, T-shirts bearing the non-verbal Budweiser label design, and nothing more, would infringe Anheuser–Busch's trademark.

True, defendants did not simply refrain from mentioning Budweiser or Anheuser–Busch by name; they also added language descriptive of the beach. Putting aside consideration of this language as a matter of parody, I suggest that the added words still fail to eliminate the connection to Anheuser–Busch that follows from use of the Budweiser label. First, the subject matter of the substituted words is not foreign to Anheuser–Busch, Budweiser, or even to

---

**5.** Notably, Venture Marketing, the defendant responsible for producing the T-shirt design, conceded that this factor favored Anheuser–Busch during oral argument on the motion for judgment notwithstanding the verdict.

beer. To the contrary, the "beach" is a familiar theme in Budweiser advertisements. Second, the substituted words do not rid the T-shirt of a Budweiser connection. Neither "Myrtle Beach," which is a location not a company name, nor any of the other words establishes that a corporation other than Anheuser–Busch sponsors the T-shirt. Anheuser–Busch in fact has used its label frequently to endorse non-beer items.[6] Nor does the fine-print reference to "Venture Marketing, Inc." tend to eliminate confusion. Anheuser–Busch requires its licensees' names to appear on their products.

2

That brings me to the question of parody.[7] Parody is not an affirmative defense to an infringement claim.

> Rather, it is merely a way of phrasing the argument that confusion is unlikely. Because the purpose of trademark law is to protect the public from confusion, it would make no sense to say that a "parody" which is likely to confuse is permitted merely because it is a "parody."

2 McCarthy, *Trademarks and Unfair Competition*, § 31:38, at 671 (2d ed. 1984). In this instance, the "parody" does little to prevent consumer confusion as to the sponsor of defendants' T-shirt. It does not ridicule Budweiser or offer social commentary on the evils of alcohol.[8] Nor could it be deemed "so obvious and heavy handed that a clear distinction was preserved in the viewer's mind between the source of the actual product and the source of the paro-

dy." *Mutual of Omaha Ins. Co. v. Novak*, 648 F.Supp. 905, 910 (D.Neb.1986), *aff'd*, 836 F.2d 397 (8th Cir.1987), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988).

All that it does is play on the words of the Budweiser label, adopting a theme (the beach) and a method (humor) that is fully consistent with Anheuser–Busch's marketing efforts. *See Cliffs Notes*, 886 F.2d at 494 (requiring two marks to send "contradictory" "messages"). Moreover, since the attempted parody does not dissociate defendants' T-shirt from Anheuser–Busch's products, consumers will be just as likely to buy the T-shirt because of its continuing affiliation with Anheuser–Busch as because of its humor. That danger is particularly acute here since Anheuser–Busch and defendants compete in the same market. The parody here thus amounts to nothing more than a "merchandising short-cut," *S.S. Kresge Co.*, 316 U.S. at 205, 62 S.Ct. at 1024. I conclude that the parody defense falls far short of supporting the verdict.

\*     \*     \*     \*     \*     \*

I agree with the district court that defendants' use of the Budweiser label design in the manner depicted in the Appendix establishes infringement as a matter of law.

I respectfully dissent.

---

6. For example, Anheuser–Busch has produced a T-shirt bearing the Budweiser label, the words "Trap Skeet," and a drawing of shotgun shells and skeet. It has also used the label in promotions affiliated with various geographical sites.

7. Parody is (i) "[a] literary or artistic work that broadly mimics an author's characteristic style and holds it up to ridicule" and (ii) "[a] performance so bad as to be equivalent to intentional mockery." *The American Heritage Dictionary of the English Language*, at 954 (1976).

8. Only parody in this "editorial or artistic" sense serves sufficiently strong First Amendment values to override government interests in trade-

mark protection. *See L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 32–33 (1st Cir. 1987). Such would be the case, for instance, if Mothers Against Drunk Driving marketed T-shirts bearing a caricature of the Budweiser trademark. (In that context, incidentally, consumers would purchase the T-shirts precisely because they were not affiliated with Anheuser–Busch. That is not true here.) I would conclude that defendants' commercial speech, whose avowed aim was to convey "how great Myrtle Beach is," is not protected by the First Amendment from enforcement of the Lanham Act.