70 F.3d 1095
 95 Cal. Daily Op. Serv. 9002, 95 Daily Journal
D.A.R. 15,739
SINALOA LAKE OWNERS ASSOCIATION; Robert A. Ain; Diantha
Ain; Leonard Bellenson; Ann Bellenson, et al.,
Plaintiffs-Appellants,
v.
CITY OF SIMI VALLEY, Defendant,
and
Roger Stephenson; James Doody; Vernon H. Persson; David
Jacinto; James E. Ley; Howard McEwan, executor
of the Estate of Sheldon McEwan,
Defendants-Appellees.
 No. 92-56399.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1994.
Decided Nov. 30, 1995.
 
 Mark Schaeffer, Fadem & Douglas, Los Angeles, California, for plaintiffs-appellants.
 Thomas A. Freiberg, Jr., and David A. Buchen, Fulbright & Jaworski, Los Angeles, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: HUG, WIGGINS, and NOONAN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This appeal concerns a 42 U.S.C. Sec. 1983 action against state officials for breaching a private dam and the consequent draining of a private lake. The dam was breached by officials of the California Division of Safety of Dams ("DSOD") because they believed it was in a damaged condition and dangerous to the homeowners downstream. The DSOD is responsible for inspecting non-federally owned dams in California. At the close of the presentation of evidence by the plaintiffs and defendants, the district court entered judgment as a matter of law on the ground that the state officials were entitled to qualified immunity. The principal issue is whether, in light of the evidence presented at trial, the state officials were entitled to qualified immunity as a matter of law. We affirm the judgment of the district court.I.
 
 PROCEDURAL BACKGROUND
 
 2
 Sinaloa Lake Owners Association, Inc. ("SLOA") owns a private dam and the lake behind the dam. The dam is an earthen structure, 800 feet long and 30 feet high, and is located upstream from the City of Simi Valley. In early 1983, after heavy rains raised the lake's water level endangering the safety of the dam, the DSOD declared an emergency, breached the dam, and drained the lake.
 
 
 3
 The SLOA and a group of homeowners brought this section 1983 action on December 16, 1983, against the City of Simi Valley, the County of Ventura, the DSOD, and the officials of DSOD for inverse condemnation, for seizure in violation of the Fourth Amendment, and for violation of both substantive and procedural due process rights guaranteed under the Fifth and Fourteenth Amendments. The district court granted the state officials' motion to dismiss on the grounds that the plaintiffs' claims were not ripe for review because they had failed to exhaust state and judicial remedies. On appeal from the entry of judgment on the pleadings, we affirmed the dismissal of the Fourth Amendment claim and the inverse condemnation claim. We reversed the dismissal of the procedural and substantive due process claims and remanded for trial. Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1404-10 (9th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990) ("Sinaloa I "). Following the remand, the City and County were dismissed by stipulation of the parties. The DSOD, as an agency of the State, was dismissed on Eleventh Amendment grounds for lack of jurisdiction. That order was appealed under a Fed.R.Civ.P. 54(b) certification, and we affirmed that order in an unpublished memorandum disposition. Sinaloa Lake Owners Ass'n v. California Division of State of Dams, 993 F.2d 884 (9th Cir.1993).
 
 
 4
 The case proceeded to a jury trial against the individual employees of the DSOD. At the conclusion of the plaintiffs' presentation of the evidence, the district court found that all defendants except James Doody, Chief Engineer of the DSOD, were entitled to qualified immunity and entered judgment as a matter of law in their favor. At the conclusion of the trial of the remaining claim against Doody, the district court held that Doody also was entitled to qualified immunity and entered judgment as a matter of law in his favor. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 II.
 RELATIONSHIP TO PRIOR APPEAL
 
 5
 In the prior appeal before our court, the district court dismissed the complaint for lack of ripeness, and therefore, lack of jurisdiction. Sinaloa I, 882 F.2d 1398. In considering the appeal we were required to take the allegations in the complaint as true. Id. at 1401. The focus of the appeal was whether the complaint alleged any valid claims for relief for which there was jurisdiction. We held that violation of procedural and substantive due process rights had been adequately alleged in the complaint. At that stage, the question of qualified immunity was not an issue because we were merely dealing with the allegations of the complaint.
 
 
 6
 This appeal concerns the issue of qualified immunity and the entry of a judgment as a matter of law at the completion of the trial. The issue before us is not the substantive issue of whether the plaintiffs were or were not deprived of property without due process of law, but rather whether these state officials were entitled to qualified immunity in carrying out their official duties. We conclude that they were.
 
 III.
 QUALIFIED IMMUNITY
 
 7
 It is important to note at the outset the purpose of the defense of qualified immunity. The Supreme Court stated "[t]he central purpose of affording public officials qualified immunity is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.' " Elder v. Holloway, --- U.S. ----, ----, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)). The qualified immunity defense allows for mistaken judgments and protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." Hunter, 502 U.S. at 229, 112 S.Ct. at 537 (citation omitted).
 
 
 8
 Ideally, this should be decided at the earliest possible stage in the litigation because it is not only an immunity from liability but an immunity from suit. Id. at 227-28, 112 S.Ct. at 536-37. In this case, qualified immunity is not being decided at an early summary judgment stage but, instead, after an evidentiary trial of the case. Following our opinion in Sinaloa I, reversing the judgment on the pleadings and remanding for trial, no motion for summary judgment was made. The first motion for judgment based on qualified immunity was made after the conclusion of the plaintiffs case in chief. Although the court ruled as to the subordinate DSOD officials, it did not rule as to Doody until the presentation of all the evidence was complete. The court obviously deemed it important to consider all the evidence before the ruling. Thus, the earliest stage at which the district court deemed it appropriate to rule on qualified immunity for Doody was after the presentation of all the evidence. The district judge observed that the historical facts of what the DSOD officials knew, the action that was taken to breach the dam, and the person who made that decision were not in dispute. He noted that both the plaintiffs and the defendants relied on the same records, but characterized the reasonableness of the action differently.
 
 
 9
 We have recently discussed the dilemma of the appropriate procedure to follow when qualified immunity is not decided at the summary judgment stage, but is presented as a defense at trial. The difficulty presented is what is appropriate for the judge to decide and what should be submitted to the jury when the facts are in dispute. Here, we are not faced with that issue because the essential facts relating to the defense of qualified immunity are not in dispute. It is important to recognize that although facts relating to the underlying issue of whether there was or was not a violation of due process were in dispute, the essential facts concerning the defense of qualified immunity were not in dispute.
 
 
 10
 Once a law enforcement officer asserts qualified immunity, "the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). This requires a two-step analysis: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" Id. An official is entitled to qualified immunity even where reasonable officers could disagree as to the lawfulness of the official's conduct, so long as that conclusion is objectively reasonable. Id. at 872.
 
 
 11
 The threshold determination of whether the law is clearly established is a question of law for the court. See id. at 871. The second part of the test, whether a reasonable state official could have believed the action taken was lawful, is a mixed question of law and fact. It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took. If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine. The difficult issue is whether, when there are disputed issues of historical fact, the entire second mixed question of law and fact should be submitted to the jury under appropriate instructions as we do in negligence cases or whether the jury should be instructed only to find the historical facts with the judge to make the ultimate determination. This issue was discussed most recently in Sloman v. Tadlock, 21 F.3d 1462, 1467-69 (9th Cir.1994), noting Act Up!/Portland and Judge Norris's dissent from failure of the court to hear that case en banc. As observed in Sloman, 21 F.3d at 1468, that issue has not been definitively resolved. However, where the essential facts are undisputed, or if no reasonable juror could find otherwise, then the question is appropriately one for the court. Hunter, 502 U.S. at 227-28, 112 S.Ct. at 536-37.
 
 A. Undisputed Facts
 
 12
 As we have stated, the facts as to what the defendants knew and the action they took are undisputed in this case. Therefore, the district court properly decided this issue as a matter of law. The district court concluded that the subordinate DSOD employees were entitled to qualified immunity as a matter of law because the evidence showed that they did not have the ultimate decision-making authority to breach the dam. We agree. It was Doody who made the ultimate decision to breach the dam; therefore, it is what he knew and the action he took that is at issue in determining qualified immunity.
 
 
 13
 The evidence at trial revealed the knowledge upon which Doody based his decision. Doody knew that heavy rains between February 25 and March 3 caused the water level behind the dam to rise. On March 2, two slides occurred on the face of the dam. By 11:00 p.m. that night, the City of Simi Valley had evacuated nearly all of the downstream residents. On March 3, the DSOD sent David Jacinto, a 10-year veteran civil engineer for the DSOD, and Sheldon McEwan, also a DSOD engineer, to inspect the dam. At 8:00 a.m. that morning, Jacinto announced that the DSOD was in control of the incident. Jacinto testified that the March 2 slide area stretched over 200 feet, about a quarter of the length of the dam embankment. Efforts were made to lower the water level and relieve pressure on the dam.
 
 
 14
 On March 4, two assistant chiefs of the DSOD, James Ley and Roger Stephenson, advised Doody that the dam was unsafe and recommended that it should be breached. Doody phoned Ley early March 6 and instructed him to not take any steps in breaching the dam because Doody wanted to discuss the possibility of the SLOA breaching the dam. Ley acted in Doody's absence while Doody was in Washington, D.C., for a conference. The parties stipulated that "Doody ordered the dam not be breached" on March 6. On March 9 and March 10, Doody telephoned the acting president of the SLOA, Frederick Schultz, and told him that the dam must be breached. Doody recommended that the SLOA breach the dam because it was their dam, but he informed them that if they did not do it, then the DSOD would breach it.
 
 
 15
 On March 11, Doody inspected the dam himself to verify what he had been told by his subordinates. Doody's inspection confirmed that serious damage occurred to the dam and that the breaching should be ordered. He believed that the dam still created a threat to the public. At that time, Doody thought that the SLOA was going to breach the dam. When the SLOA informed him that it was not going to do so, Doody informed the SLOA that the DSOD would do it.
 
 
 16
 In response to Doody's decision to breach the dam, the SLOA sought a temporary restraining order ("TRO"). After a hearing, the superior court judge denied the TRO. The SLOA did not appeal that decision. The DSOD proceeded to breach the dam that afternoon. It took several days to complete the breach.
 
 B. Clearly Established Law
 
 17
 The plaintiffs maintain that they were entitled to notice and an opportunity to be heard before their dam was breached. They contend that the few hours' notice they were given to prepare the TRO and for the hearing was inadequate. Finally, they contend that this did not involve extraordinary circumstances in which immediate action was required.
 
 
 18
 While the right to due process is "clearly established" by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard. The right the official is alleged to have violated must be made specific in regard to the kind of action complained of for the constitutional right at issue to have been clearly established. See Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640, 107 S.Ct. at 3039. While the very action in question need not previously have been held to be unlawful, "in the light of pre-existing law the unlawfulness must be apparent." Id.
 
 
 19
 Here, the plaintiffs rely only on a broad due process right, not a right applicable to the facts of this case that a reasonable official would find the unlawfulness to be apparent. The California statute required the DSOD officials to take whatever steps were necessary to protect life and property. The Dam Act of 1929, codified in the California Water Code, sections 6000, et seq., provides that the DSOD is responsible for supervising, maintaining, etc., the dams for the protection of life and property. The statute provides the DSOD with grounds for remedial action and emergency powers. Section 6111 states that in an emergency, the DSOD may:
 
 
 20
 (a) Lower the water level by releasing water from the reservoir.
 
 
 21
 (b) Completely empty the reservoir.
 
 
 22
 (c) Take such other steps as may be essential to safeguard life and property.
 
 
 23
 West's Ann.Cal.Water Code Sec. 6111 (emphasis added); see also Department of Public Works of the State of California v. The City of San Diego, 122 Cal.App. 159, 10 P.2d 102 (1932). Doody was exercising his judgment under the California statute. The law was not clearly established that this action can be taken only after a due process hearing. No statutory provisions or court decisions had clearly provided that a hearing is required before emergency action is taken to preserve public safety when a dam is in danger of failing. Although we held in Sinaloa I that the facts as alleged in the complaint entitled the plaintiffs to a due process hearing, this is quite distinct from whether that law was clearly established at the time Doody made his decision.
 
 C. Reasonable Belief
 
 24
 Although our conclusion that the law was not clearly established at the time of the conduct at issue would normally end the matter, the district court went on to hold that even if the plaintiffs had established that the law was clearly established, Doody was nonetheless entitled to qualified immunity because "a reasonable dam safety engineering official, similarly situated, could have believed breaching the dam was lawful." Therefore, we will address this aspect also. Thus, the issue becomes, even if the law was clearly established, whether a reasonable DSOD official, under the circumstances of this case, could have reasonably believed that his conduct was lawful.
 
 
 25
 As we have noted, "[t]he central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.' " Elder v. Holloway, --- U.S. ----, ----, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)).
 
 
 26
 Doody believed he was acting under emergency conditions. Thus, not only were his actions within his statutorily granted powers under the California Water Code, but they were reasonable in light of the circumstances. Doody had the responsibility for the safety of the people downstream and was confronted with an earthen dam where an extensive portion of the dam had sloughed off in heavy rain, and his engineering officials had advised him that the dam should be breached. The emergency he perceived was an unsafe dam that endangered the people downstream and the likely possibility that there would not be another opportunity to breach the dam if it filled up even part way. The hearing before the state judge regarding the plaintiffs' request for a TRO and the judge's ruling in the DSOD's favor augmented Doody's belief that his actions were reasonable. Although that hearing may not have been sufficient for procedural due process, if such process was required, the court's ruling contributed to a reasonable belief that his conduct was lawful. Therefore, we need not decide whether the process received was adequate because we conclude that the defendants were properly accorded qualified immunity protection.
 
 
 27
 Similarly, we conclude that the defendants were also entitled to qualified immunity for the plaintiffs' substantive due process claim. Again, we look to an objective inquiry: whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the information the officials possessed. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3040. "[T]he question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Because we concluded above that Doody's and the other DSOD officials' actions were reasonable, the officials are entitled to the protection of qualified immunity.
 
 IV.
 FOURTH AMENDMENT CLAIM
 
 28
 The plaintiffs ask us to reinstate their Fourth Amendment claim that was dismissed in Sinaloa I. Under the discretionary doctrine of the law of the case, "one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." Merritt v. Mackey, 932 F.2d 1317, 1320 (9th Cir.1991) (quoting Kimball v. Callahan, 590 F.2d 768, 771 (9th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979)). However, "the prudential doctrine of law of the case does not bar reconsideration of an issue when 'controlling authority has since made a contrary decision of the law applicable to such issues.' " Dean v. Trans World Airlines, Inc., 924 F.2d 805, 810 (9th Cir.1991) (quoting Kimball, 590 F.2d at 772).
 
 
 29
 The plaintiffs rely on Soldal v. Cook County, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), for the proposition that the Fourth Amendment protects property from unreasonable seizure. Soldal did not change any substantive law applicable to this case. Therefore, we find no justification for departing from our usual policy of adhering to the law of the case.
 
 V.
 
 30
 DENYING THE AMENDMENT TO ALLEGE A PENDENT STATE CLAIM
 
 
 31
 Finally, the plaintiffs contend that the district court erred by failing to exercise pendent jurisdiction over their state-law takings claim. We review a district court's decision not to accept pendent jurisdiction for abuse of discretion. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Danner v. Himmelfarb, 858 F.2d 515, 523 (9th Cir.1988), cert. denied, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989).
 
 
 32
 In Sinaloa I, we held that the plaintiffs' takings claim was not ripe because the plaintiffs failed to exhaust their state judicial remedies, thereby depriving the district court of subject matter jurisdiction. Sinaloa I suggested in footnote 4 that it would be entirely appropriate to allow the plaintiffs to amend their complaint to include a pendent state claim. 882 F.2d at 1404 n. 4. This was a suggestion, not a holding. The plaintiffs sought to amend their complaint to allege a state takings claim against the City, the County, and the DSOD. The City and County were dismissed by stipulation; the DSOD was dismissed as a state agency for lack of jurisdiction under the Eleventh Amendment.
 
 
 33
 The district court declined to allow the amendment to add a state claim against any of the three parties because there was no remaining federal claim against any of the three defendants named in the proposed amendment. "It has long been understood that if the federal claims that are the basis for jurisdiction are eliminated from the case, the federal court has discretion whether to exercise pendent jurisdiction over the remaining state-law claims or to decline to exercise that jurisdiction." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Sec. 3567.1, at 25 (West Supp.1995); see also Danner, 858 F.2d at 525. We hold that the district court did not abuse its discretion in declining to exercise pendent jurisdiction over the state-law takings claim when the federal actions against those defendants had been dismissed.
 
 VI.
 CONCLUSION
 
 34
 The judgment for the defendants based on qualified immunity is affirmed. The plaintiffs' remaining contentions lack merit.
 
 
 35
 AFFIRMED.