Rudi ACOSTA; Alma Acosta,
Plaintiffs–Appellants,

v.

CITY AND COUNTY OF SAN FRAN-
CISCO; Daniel Yawczak, Defen-
dants–Appellees.

No. 94–16272.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1995.

Decided May 17, 1996.

As Amended June 18, 1996.

**1144**

Andrew C. Schwartz and Rachel Bernstein, Casper, Meadows & Schwartz, Walnut Creek, California; Richard Rosenstock (argued), Santa Fe, New Mexico, for the plaintiffs-appellants.

Kimon Manolius and Patrick J. Mahoney (argued), Deputy City Attorneys, San Francisco, California, for the defendants-appellees.

Before: GOODWIN and REINHARDT, Circuit Judges and KING,* District Judge.

REINHARDT, Circuit Judge:

Plaintiffs Rudi and Alma Acosta whose 21 year-old son, Michael Acosta, was shot and killed by San Francisco Police Inspector Daniel Yawczak appeal the district court's judgment as a matter of law in favor of the defendants.

The Acostas sued the City and County of San Francisco, its police chief, and officer Yawczak, alleging causes of action under 42 U.S.C. § 1983 and California state law.[1] The trial was bifurcated. The Acostas' suit against Yawczak proceeded to trial first and the district court stayed discovery in the suit against the municipality and the Police Chief.

The following facts are not in dispute: On November 2, 1991 at 6:45 p.m., Yawczak, a San Francisco police officer who was off-duty and in plainclothes, was standing in front of his car in the Pacific Heights neighborhood of San Francisco when he heard a woman scream and saw two young men, Ernesto Pecson and Edwin Silva, running with what he believed to be a purse. Yawczak drew his gun, a .45 caliber semiautomatic pistol, and chased Pecson and Silva around the block. After Pecson and Silva got into a waiting car, Yawczak fired two shots into the car, the first of which killed the driver, Acosta. The jury was required to determine whether in doing so Yawczak used excessive force.

At the close of the plaintiffs' case, Yawczak moved for judgment as a matter of law on the merits and on the ground of qualified immunity. The district court took the motions under submission.[2] At the close of evidence, Yawczak renewed the motions and the court again took them under submission pending the jury's verdict.

The jury found that Yawczak violated Michael Acosta's constitutional rights by using

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. The plaintiffs withdrew their state law claim at trial.

2. In response to defense counsel's inquiry as to when the district court would rule on its qualified immunity motion, the court said: "I denied it for this stage. You can renew it after trial."

excessive force against him and returned a verdict in favor of the plaintiffs.[3] Subsequently, the jury awarded $225,000 for Mr. and Mrs. Acosta's non-economic damages, $25,000 for Michael Acosta's pain and suffering, and $9,358.19 for funeral and burial expenses. After the jury returned its verdict on liability, Yawczak orally renewed his motions and filed an alternative motion for a new trial.

Following the jury's award of damages, the district court granted defendant Yawczak's motions for judgment on the merits as a matter of law and on the ground of qualified immunity. When it granted judgment in Yawczak's favor, the district court also dismissed the Acostas' entire complaint with prejudice, thereby dismissing their claims against the City and County of San Francisco and the Chief of Police.[4] The district court failed, however, to rule on Yawczak's motion in the alternative for a new trial.

## DISCUSSION

### I. Judgment as a Matter of Law

The district judge made detailed findings of fact in his order granting judgment in favor of Yawczak. In making these findings, he did not view the evidence presented at trial in the light most favorable to the plaintiffs and, in fact, included a "finding" that directly contradicted the jury's verdict.[5] Based on his factual findings, the district judge held that Yawczak was entitled to judgment as a matter of law because no reasonable juror could have concluded that the car did not move prior to the first time he fired at Acosta.

 We review the district court's grant of judgment as a matter of law de novo. *Vollrath Co. v. Sammi Corp.,* 9 F.3d 1455, 1460 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury. *Id.*

---

3. The jury was instructed to assess the reasonableness of the force used by Yawczak according to the excessive force standard articulated by the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989):

 The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The nature of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. The reasonableness inquiry is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him without regard to his underlying intent or motivation. An officer's "evil" intentions will not make a constitutional violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

 The reasonableness of a particular use of force must be judged in light of the fact that a police officer has a right to use such force, including deadly force, as is necessary under the circumstances to protect himself and others from what he reasonably believes to be a threat of great bodily injury or harm.

 If you find that at the moment Inspector Yawczak fired the first shot at Michael Acosta

 he reasonably believed that deadly force was necessary to protect himself or others from what he reasonably believed to be a threat of great bodily injury or harm, then I instruct you that his use of force was lawful and not excessive.

 On the other hand, if you find that at the moment that he fired the first shot at Michael Acosta, Inspector Yawczak did not reasonably believe that deadly force was necessary to protect himself or others from what he reasonably believed to be a threat of great bodily injury or harm, then I instruct you that his use of force was excessive and unlawful.

4. We reject the defendants' contention that the plaintiffs have waived any right to have the district court's judgment reversed as to the City and County of San Francisco and Police Chief Casey because they failed to raise any issues on appeal regarding these defendants. As the plaintiffs point out, these claims remain untried. Plaintiffs are clearly appealing the district court's judgment in its entirety, which includes the dismissal of the untried claims.

5. The district court's factual finding # 13 reads: "Based on the totality of the circumstances, Inspector Yawczak's use of force at the moment of firing the shot that killed Michael Acosta was reasonable and not excessive." We need not consider here whether this finding is actually a conclusion of law.

The jury in this case was faced with conflicting evidence regarding various factual issues. Among them were: whether one of the passengers said "Run him over" prior to Yawczak's first shot at Acosta; whether Yawczak saw Acosta move the car transmission lever into gear; whether the car was moving in the direction of Yawczak prior to the first shot; if the car was moving, how fast; and Yawczak's location at the time he fired the shots. In order to reach its verdict that the force used by Yawczak was excessive, the jury had to resolve at least some of these factual disputes.

■ Although the district court stated that it recognized its obligation to view the evidence in the light most favorable to the nonmoving party, it failed to do so. The district court's discussion of whether the defendant was entitled to judgment as a matter of law is limited to whether there was a legally sufficient basis to support the conclusion that the car did not move prior to the time Yawczak first fired at Acosta.[6] The answer to that question, however, is not dispositive of plaintiffs' claim. Instead of addressing the dispositive issue: whether the evidence, viewed most favorably to the Acostas, permitted a conclusion that a reasonable officer in Yawczak's position would not have believed himself to be in danger, the district court granted judgment on the basis of its determination that a reasonable juror could not have concluded "that the car did not move." While the district court may have been correct that no reasonable juror could have reached that conclusion,[7] it erred in reversing the jury's verdict on that basis.

On the basis of the evidence presented at trial, the jury could have reasonably concluded that a reasonable officer, who had positioned himself facing the driver so that he was standing closer to the side than the dead-center of the car, would have recognized that he could avoid being injured when the car moved slowly,[8] by simply stepping to the side.[9] In short, a juror could have reasonably reached the conclusion at which the

6. The final paragraph of the district court's order reads as follows:

 The court finds as a matter of law, that plaintiffs failed to prove that the car did not move forward before Inspector Yawczak fired at the driver. The court further finds that the defense proved by a preponderance of the evidence that the car did move forward prior to the first shot. The only reasonable conclusion a jury could reach is that the plaintiffs failed to prove by a preponderance of the evidence that Inspector Yawczak's use of force was objectively unreasonable. Yawczak is accordingly entitled to judgment as a matter of law.

7. As the defendants and the district court note, the only direct evidence that the car moved before Yawczak fired at Acosta was the testimony of Yawczak himself and of Pecson, who testified that the car began to roll slowly. There were other witnesses who testified that the car did not move prior to Yawczak's first shot at Acosta, namely Stacey Rothberg, Shannon Martinusen, and David Martinusen—three students walking down the street at the time of the incident. However, their testimony was not based on what they saw; it was based on what they heard because they started running in the other direction after David saw Yawczak's gun. Their testimony as to whether or not the car moved was based on the fact that it was only after the first shot that they "heard" the car move. The only other "eye"-witnesses to the incident either did not start paying attention until after they heard shots and therefore could not testify as to

whether the car moved before the first shot, turned away before Yawczak even reached the car, or were uncertain as to whether they began looking before or after the first shot was fired.

8. Pecson, one of the passengers in the car, stated that no one in the car did or said anything after they saw Yawczak standing in front of the car. Pecson, who was the only witness other than Yawczak to say that the car moved before Yawczak fired at Acosta, stated that it moved "just a little; just a little movement." An expert witness testified that an officer in Yawczak's position would have had an ample opportunity to move out of the way of the vehicle without suffering serious bodily harm, given the evidence regarding Yawczak's location, the car's location, and the nature of the car's movement.

9. There is no question that an automobile *can* inflict deadly force and thus under certain circumstances can constitute the type of threat that justifies an officer's shooting the driver. *U.S. v. Aceves–Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987), *cert. denied,* 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). Viewing the evidence in the light most favorable to the plaintiffs, this is not such a circumstance. The cases relied upon by the district court and the defendants, cases in which the police officer's use of deadly force against a driver was found to be reasonable, are different from this case in a most important respect—the speed at which the vehicle was traveling and the officer's ability to avoid the oncoming vehicle.

jury appears to have arrived: that the car did move prior to Yawczak's shooting Acosta but that it was moving or rolling sufficiently slowly that a reasonable officer in Yawczak's position would not have perceived himself to be in danger of serious bodily harm. Thus, there was a sufficient evidentiary basis for a reasonable juror to find that Yawczak used excessive force and to join in a verdict in favor of the Acostas. The grant of judgment as a matter of law for Yawczak was improper.

## II. Qualified Immunity

■ Determining whether a law enforcement officer is entitled to qualified immunity involves the consideration of two questions: "1) Was the law governing the officer's conduct clearly established? 2) Under that law, could a reasonable officer have believed that his conduct was lawful?" *Sinaloa Lake Owners Assoc. v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir.1995) (quoting *Act Up!/Portland*, 988 F.2d 868, 871 (9th Cir. 1993)).[10] The district court properly concluded that the law governing when an officer may use deadly force against an unarmed fleeing suspect was clearly established at the time of Acosta's shooting. *See, e.g., Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) ("An officer's use of *deadly* force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' "), *cert. denied*, — U.S. —, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995) (citation omitted).

■ However, the district court erred in concluding that a reasonable officer in Yawczak's position could have reasonably believed that shooting at the driver of a slow-moving car was lawful. Instead of relying on the factual findings implicit in the jury's verdict in favor of the Acostas, the district court granted Yawczak qualified immunity based on its own contrary factual findings. The Acostas argue that regardless of whether it is the judge or the jury who makes the ultimate determination on the issue of qualified immunity, that decisionmaker must rely on the jury's factual findings as to the disputed issues of fact. They are correct. Regardless of who makes the ultimate determination as to qualified immunity, the jury, not the judge, must decide the disputed "foundational" or "historical" facts that underlie the determination. *See, e.g., Sinaloa*, 70 F.3d at 1099; *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir.1994).

■ The factual findings the jury must have made to reach its verdict that Yawczak violated Acosta's constitutional rights by using excessive force are dispositive of the question of Yawczak's entitlement to qualified immunity because they resolve the issue of whether it was objectively reasonable for Yawczak to believe that the use of deadly force was lawful. The jury was asked to evaluate the objective reasonableness of Yawczak's conduct. In order to do so, it first had to determine what Yawczak actually did. In that connection, the jury was presented with evidence that when Yawczak shot at Acosta, the car was moving or rolling very slowly from a standstill, so slowly that he could not have reasonably believed that it posed a threat of great bodily harm. While that evidence was disputed by Yawczak, and while Pecson's role in the affair was not such as would engender confidence in the truthfulness of his testimony, the jury had a fair opportunity to make credibility judgments regarding the witnesses' testimony.[11] In

10. We note that this is not a case in which the issue of qualified immunity should have been decided at an early stage in the litigation because the immunity inquiry does not depend on an essentially legal question. *See e.g., Johnson v. Jones*, — U.S. —, —, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985). Here, qualified immunity could only be decided after disputes were resolved as to the facts and circumstances within Yawczak's knowledge and as to what Yawczak and Acosta actually did. *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir.1994). Accordingly, the defendants properly did not ask the district court to decide the immunity issue on summary judgment.

11. While Pecson's testimony was introduced by way of deposition, it is the objective facts and

**1148**

fact, a review of the record reveals that it is highly likely that the jury developed serious doubts regarding Yawczak's veracity.[12] If the jury found that the force used by Yawczak was excessive, it necessarily found that Acosta was not driving the vehicle at him at a high rate of speed. In short, in order to reach its verdict, the jury must have found that at the moment that Yawczak fired the deadly shot at Acosta, it was not reasonable for him to believe that Acosta posed a threat of great bodily injury or harm to him or to anyone else.[13]

Yawczak acknowledges that an individual's right not to be subjected to excessive force is well established. However, he appears to argue that it was objectively reasonable for him to believe that using deadly force against Acosta under the circumstances did not violate Acosta's rights. However, as the Second Circuit observed under similar circumstances, "[t]he problem with this argument is that it depends upon the officers' version of the facts—a version the jury plainly reject-

ed." *Posr v. Doherty,* 944 F.2d 91, 95–96 (2nd Cir.1991).[14]

If we accept the jury's version of the facts, Yawczak cannot be entitled to qualified immunity. Because the law governing "shooting to kill" a fleeing suspect is clearly established and because a reasonable officer could not have reasonably believed that shooting at the driver of the slowly moving car was lawful, we hold that Yawczak is not entitled to qualified immunity.

### III. New Trial Motion

Rule 50(c)(1) of the Federal Rules of Civil Procedure requires that in cases in which a party has moved for judgment as a matter of law and, in the alternative, for a new trial, the district court must, after granting judgment as a matter of law, also rule on the motion for a new trial.[15] The district judge in this case failed to do so. Defendants urge us to deem the new trial motion to have been granted by the district court or to give the district court another opportunity to rule on it.

related circumstances that appear to be most damaging to Yawczak's version of the events and thus most supportive of Pecson's. *See, e.g., infra* note 12.

12. Yawczak's testimony was contradicted by that of several independent witnesses as to many aspects of the shooting. Contrary to Yawczak's testimony, several bystanders testified that he threatened to blow the alleged purse-snatchers' heads off; another witness testified that Yawczak stepped to the side of the car although he claimed to have rolled off the hood; yet another witness testified that Yawczak's buttocks never touched the ground whereas Yawczak said he fired one of the shots while sitting on them. Also, the medical examiner who examined Michael Acosta's body testified that Yawczak's account of having fired a shot from a seated position or on his buttocks was inconsistent with the physical evidence. Finally, during the course of the testimony of the plaintiffs' expert witness, the jury learned that the account of the shooting Yawczak gave at trial differed in numerous respects from the accounts he had previously given, once during an interview after the incident and once when he was deposed.

13. The jury was instructed that Yawczak's use of force was only excessive and unlawful if "at the moment that he fired the first shot at Michael Acosta, Inspector Yawczak did not reasonably

believe that deadly force was necessary to protect himself or others from what he reasonably believed to be a threat of great bodily injury or harm." We must assume that the jury acted in accordance with the instructions given it. *City of Los Angeles v. Heller,* 475 U.S. 796, 798, 106 S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986).

14. In *Posr,* as here, the court of appeals was compelled to infer from the verdict the nature of the facts that the jury found. *Id.* at 96.

15. Rule 50(c)(1) provides:

(1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings

Rule 50(c)(1) does not specify the consequences that follow from a district court's failure to issue a conditional ruling on a motion in the alternative for a new trial. *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1458 (9th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). We have concluded, however, that we have discretion to either remand to the district court to let it decide the new trial motion or to decide the new trial motion ourselves. *Id.* In this case, the circumstances dictate the latter course.

Yawczak moved for a new trial solely on the ground that the district court failed to submit special interrogatories to the jury.[16] The defense asked for six special interrogatories, four of which related to the plaintiffs' withdrawn state law claim. Of the two other questions proposed by the defendants, one was the question that actually appeared on the verdict form that was completed by the jury: whether Yawczak violated Acosta's constitutional rights by using excessive force. The jury answered that question in the affirmative. The other question proposed by the defendant was whether the car moved prior to the time Yawczak fired his first shot at the driver. As we have already concluded, given the other evidence in the record, the answer to that question does not resolve the qualified immunity issue.

Whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court. Fed. R.Civ.P. 49(b); *Frank Briscoe, Co., Inc. v. Clark County*, 857 F.2d 606, 614 (9th Cir.

1988), *cert. denied*, 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989). Whatever the limits of that discretion may be, the defendants offer no reason to conclude that the district court exceeded them in this case. The defendants argue that the jury's answers to the special interrogatories would have assisted the district judge in making the qualified immunity determination.[17] The district judge concluded otherwise and in doing so he acted well within his discretion. *See, e.g., R.H. Baker & Co. v. Smith–Blair, Inc.*, 331 F.2d 506, 508 (9th Cir.1964). Accordingly, the new trial motion was without merit, and we remand for entry of the jury's verdict.[18]

## CONCLUSION

We reverse the district court's grant of qualified immunity and judgment as a matter of law and deny the new trial motion.

We reinstate the jury's verdict against Yawczak, reverse the dismissal of the plaintiffs' complaint and reinstate their claims against the remaining defendants. The Acostas are entitled to attorney's fees for the district court and appellate proceedings thus far.

REVERSED AND REMANDED.

shall be in accordance with the order of the appellate court.

**16.** In their brief, the defendants seem to offer additional grounds in support of their original motion for a new trial. However, their effort to amend their original new trial motion on appeal is not appropriate in this case. We consider only the ground raised in the new trial motion filed in district court.

**17.** In *Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994), we pointed out that in qualified immunity cases in which the immunity determination is made after trial whether the judge or the jury should make that determination is still an unanswered question. 21 F.3d at 1468; *see also Sinaloa*, 70 F.3d at 1099 ("If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine. The difficult issue is

whether, when there are disputed issues of historical fact, the entire second mixed question of law and fact should be submitted to the jury under appropriate instructions as we do in negligence cases or whether the jury should be instructed only to find the historical facts with the judge to make the ultimate determination."). We do not need to answer that question here.

**18.** The Fourth Circuit followed this procedure in *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975), (cited with approval in our opinion in *Vollrath*, 9 F.3d at 1459, as well as in Moore's *Federal Practice*, 5A Moore's *Federal Practice* ¶ 50.14 at 50–120), after concluding "that no useful purpose would be served by remanding to the district judge to entertain and decide a renewed motion for a new trial." *Mays*, 502 F.2d at 110. Given the nature of the new trial motion filed with the district court here, we reach the same conclusion.