113 F.3d 1241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alvin Dean McRAE, husband; Deborah McRae, wife, Plaintiffs-Appellants,
v.
John TENA, individually and as a police officer of the
defendant, City of Casa Grande, Arizona; Bob Tucci,
individually and as police officer of the defendant, City of
Casa Grande, Arizona; Jerry Monahan, individually and as
police officer of the defendant, City of Casa Grande,
Arizona; Greg Clark, individually and as police officer of
the defendant, City of Casa Grande, Arizona; R. D.
Barnhart, individually and as police officer of the
defendant, City of Casa Grande, Arizona, Defendants-Appellees.
 No. 96-15377.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 18, 1997.
Decided April 30, 1997.
 
 1
 Before: NOONAN and TROTT, Circuit Judges, and MOSKOWITZ, District Judge*:
 
 
 2
 MEMORANDUM**
 
 
 3
 Alvin McRae (McRae) and his wife, Deborah, (collectively, Appellants) appeal the district court's order granting summary judgment in favor of Appellees, the police officers involved in a shooting incident with McRae. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm, although for somewhat different reasons than the district court enunciated.
 
 FACTS AND PROCEEDINGS
 
 4
 McRae suffers from multiple personality disorder. Dual, one of his personalities, is an aggressive personality that comes out when McRae is confronted by police. When Dual takes over, McRae blacks out and cannot remember what happened while Dual was in control.
 
 
 5
 On June 20, 1993, Officers Bob Tucci (Tucci) and John Tena (Tena) of the Casa Grande, Arizona, police force, were responding to a call about a prowler in the neighborhood in which McRae was living when they noticed McRae sleeping in the front yard with a knife by his side. When the officers woke McRae to ask him about the prowler and the knife, McRae responded that he knew nothing about the prowler and asked the officers to return his knife and get off the property. When the officers refused to return the knife, McRae asked them to leave. Dual took over at that point and McRae remembers nothing more until waking up in the hospital.
 
 
 6
 Tucci and Tena testified that after he awoke, Dual stood up and started swinging a wooden cane that had been by his side. Dual advanced toward Tena swinging the cane and yelling; Tena sprayed him in the face with mace from a distance of approximately 7 to 10 feet. The spray had little impact and Dual kept advancing so Tena got behind his patrol car parked at the end of the driveway and sprayed Dual a second time. Dual retreated toward the center of the yard and Tena called for back-up because he had gotten some spray in his own eyes. At some point shortly after Dual was sprayed a second time, Tucci and Tena drew their guns.
 
 
 7
 A stand-off ensued: Dual refused to drop the cane unless the officers put down their guns; the officers responded that they would put down their guns if Dual would drop his cane. Dual walked to the carport and returned to the yard several feet from the patrol cars with the cane in one hand and a metal object in the other. The metal object was described as a couple of inches wide, one-half inch thick, and 13 to 18 inches long. There is conflicting testimony about whether Dual continued to hold the cane after getting the metal object.
 
 
 8
 Officers Greg Clark, Jerry Monahan (Monahan), and R.D. Barnhart arrived after Dual got the metal object and tried to talk to him to diffuse the situation. At least one of these newly arriving officers knew of McRae's multiple personality disorder and told the other officers. No one instructed any of the officers to put down their guns. While the other officers were talking to Dual, Tena was standing behind his patrol car with his gun in his hands and his hands resting on the roof of the car. All the windows in the car other than the front driver's side window were shut. Tena was exposed from his mid-chest upwards.
 
 
 9
 Monahan was instructed by a lieutenant that all officers should leave the scene. When Monahan told Dual they were leaving, Dual responded that all officers could leave but that he was going to kill Tena when Tena put his gun down. He indicated he would throw the metal object in his hands on the count of three. Dual counted to two and had his arm back ready to go forward. There is conflicting evidence about whether Dual advanced toward Tena. Tena shot Dual after Dual counted to two.
 
 
 10
 Appellants sued the five police officers involved in the incident (collectively, Appellees) under 42 U.S.C. § 1983 and various state laws. The district court granted appellees' motion for summary judgment on the ground of qualified immunity. Appellants appeal.
 
 ANALYSIS
 
 11
 Whether Appellees are entitled to qualified immunity involves a two-fold inquiry: "1) Was the law governing the officer's conduct clearly established? 2) Under that law, could a reasonable officer have believed that his conduct was lawful?" Acosta v. City & County of San Francisco, 83 F.3d 1143, 1147 (9th Cir.), cert. denied, 117 S.Ct. 514 (1996). Appellants bear the burden of proving that the governing law is clearly established, while Appellees bear the burden of showing that a reasonable officer could have believed his conduct was lawful. Maraziti v. First Interstate Bank of Cal., 953 F.2d 520, 523 (9th Cir.1992).
 
 
 12
 Contrary to the district court's conclusion, we believe that at the time of the shooting there was a clearly established right to be free from the excessive use of force when police officers effect a seizure. See Acosta, 83 F.3d at 1147; Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991). In 1985 the Supreme Court held that police may use deadly force to arrest a fleeing suspect "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm ... to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). In 1989 the Supreme Court applied Garner 's Fourth Amendment objective reasonableness test to "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." Graham v. Connor, 490 U.S. 386 (1989). Whether the amount of force used to effect any particular seizure is objectively reasonable is determined by considering all the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." The court must consider, for example, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97.
 
 
 13
 Although the test enunciated by these cases is one of reasonableness on the particular facts, the rules under which police conduct will be judged were settled at the time of the shooting. Therefore, the burden shifts to Appellees to prove that reasonable officers could have believed their conduct was lawful.
 
 
 14
 McRae relies in part on the testimony of his expert to show that the police conduct was unreasonable. However, "[t]he fact that an expert disagrees with an officer's actions does not render the officer's actions unreasonable." Reynolds v. County of San Diego, 84 F.3d 1162, 1170 (9th Cir.1996). We must determine whether there is a factual issue based on the testimony presented to the district court.
 
 
 15
 McRae argues that there is a factual issue about whether the actions leading up to the shooting were reasonable. In Alexander v. City & County of San Francisco, 29 F.3d 1355, 1366 (9th Cir.1994), we recognized that "storm[ing] the house of a man whom [officers] knew to be a mentally ill, elderly, half-blind recluse who had threatened to shoot anybody who entered" might be unreasonable even though the officers' actions once inside the house were reasonable depending on the officers' purpose in entering the house. Here, Tena stated that he intended to arrest McRae after Dual threatened him by swinging the cane. At some point the police felt it was appropriate to leave rather than pursue the arrest. It is possible that another officer would have come to this conclusion earlier in the stand-off. However, "[t]he inquiry is not 'whether another reasonable or more reasonable interpretation of events can be construed ... after the fact.' Rather, the issue is whether a reasonable officer could have believed that his conduct was justified. 'This is so notwithstanding that reasonable officers could disagree on the issue.' " Reynolds, 84 F.3d at 1170 (citations omitted). Because there is no dispute about Tena's intent and given the exigencies and the escalation of the situation, it was reasonable for the officers to have acted the way they did before the shooting itself.
 
 
 16
 As for the shooting itself, we hold that Tena has qualified immunity. There is no dispute that Dual threatened to kill Tena. Tena could have been seriously injured, either by being struck by the metal object or by flying glass if Dual had thrown the object through the police car behind which Tena was standing. Police officers are not required to retreat, Reed v. Hoy, 909 F.2d 324, 331 (9th Cir.1989), and "need not avail themselves of the least intrusive means of responding to an exigent situation," Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994). We will not require a police officer who has been threatened by an armed aggressor to take his eyes off the aggressor and duck behind a car to avoid the object the aggressor threatened to throw at the officer. Dual had the means and apparent ability to carry out his threat to kill Tena. A reasonable officer could have believed that under all the facts and circumstances, Tena's response, shooting Dual after he began his count-down to throw the metal object but before he actually threw it, was lawful.
 
 
 17
 Summary judgment in favor of appellee police officers is AFFIRMED. Appellants' motion to strike the references to McRae as a "felon" in Appellee's brief is GRANTED.
 
 
 
 *
 Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3