**NOT FOR PUBLICATION**

**FILED**

JUN 10 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSIE LEE JETMORE STODDARD-NUNEZ, individually and as the successor-in-interest of Shawn Joseph Jetmore Stoddard-Nunez,<br><br>              Plaintiff-Appellant,<br><br>  v.<br><br>CITY OF HAYWARD, a municipal entity; MANUEL TROCHE, individually and in his official capacity as a Police Officer for the City of Hayward,<br><br>              Defendants-Appellees. | No.    18-16403<br><br>D.C. No. 4:13-cv-04490-KAW<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Kandis A. Westmore, Magistrate Judge, Presiding

Argued and Submitted February 6, 2020
San Francisco, California

Before: PAEZ and BEA, Circuit Judges, and ADELMAN,** District Judge.

Jessie Stoddard-Nunez ("Jessie") appeals the district court's grant of

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*     The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

summary judgment to defendants City of Hayward and Officer Manuel Troche on the merits of his excessive force claim under 42 U.S.C. § 1983. The district court also ruled that even if Officer Troche had used excessive force, he was entitled to qualified immunity because the law was not clearly established. Because Jessie could not prevail on his excessive force claim, the district court granted summary judgment on his wrongful-death claim under California law.[1] We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

**1.** The district court erred in granting summary judgment to defendants on Jessie's § 1983 excessive force claim. To determine whether Officer Troche's use of force was objectively reasonable, we balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). The parties do not dispute that Officer Troche fired nine shots at Shawn or that firing a gun constitutes deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 3–5 (1985).

The strength of the government's interest is measured by reference to three factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the

---

[1] Jessie brings his claim on behalf of his brother, Shawn Stoddard-Nunez ("Shawn"), as the personal representative of Shawn's estate.

2

suspect] is actively resisting arrest or attempting to evade arrest by flight." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (internal quotation marks and citation omitted). This list is "non-exhaustive"; "[c]ourts still must 'examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).

Officer Troche testified that Arthur Pakman's ("Pakman") Honda Civic veered toward him, he opened fired only after he perceived the swerve, and he did not continue to shoot at the vehicle as it drove away. But there remain genuine issues of material fact with respect to Officer Troche's account of the incident, which inform whether Officer Troche's use of deadly force against Shawn was reasonable and whether the car posed an immediate threat to Officer Troche's or Russell McLeod's ("McLeod") safety. *See* Fed. R. Civ. P. 56(c).

First, in a video interview taken shortly after the incident, Pakman stated, "I didn't drive at [Officer Troche]. I didn't drive at anybody. I wasn't trying to run anybody over." Pakman's video interview included more than "undisclosed motivations," Ans. Br. 19; he directly stated he did not drive toward Officer Troche.

Second, the coroner's report states that "[McLeod] had been sitting in the

3

passenger seat with the door open and sustained minor injuries. TROCHE continued to fire his handgun at the car as it went past him." Firing the gun "as [the car] went past him" is inconsistent with Officer Troche's statement that he fired at the vehicle only as it approached him.

Third, and critically, the coroner noted that the fatal bullet entered Shawn's right shoulder and passed through the left side of his neck, and photographs of the front and rear passenger doors of the Honda Civic show bullet holes in the side and rear of the car. The district court disregarded the photographs because "absent an expert report, there is no information as to what conclusions a jury could draw from [the photographs]." But expert evidence is not needed to assist a trier of fact in drawing an obvious inference. *See Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). A reasonable trier of fact could examine the photographs and conclude that Officer Troche fired his gun from the side and rear of Pakman's car. One of the photographs shows a bullet hole passing directly into the passenger door and another shows a bullet pointing toward the front of the car, lodged into the frame of the passenger door. Drawing all reasonable inferences in Jessie's favor, a jury could conclude that at least one of the photographs depicts bullet holes inconsistent with Officer Troche's account that he fired his gun at *only* the front of the car.

Resolution of these outstanding material factual issues is essential for determining the reasonableness of Officer Troche's use of deadly force, and must

4

be resolved by a trier of fact. We do not decide whether any of the evidence submitted by Jessie would be admissible at trial; at the summary-judgment stage, "we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

We vacate the district court's grant of the defendants' summary-judgment motion on Jessie's excessive-force claim under 42 U.S.C. § 1983 and remand for further proceedings.

**2.** The district court erred when it determined that Officer Troche was entitled to qualified immunity on Jessie's excessive-force claim. To determine whether a police officer is entitled to qualified immunity, we consider whether (1) the defendant's conduct violated a constitutional right, and (2) that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (1994), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009). The "clearly established law should not be defined at a high level of generality"; it must be "particularized" to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks and citations omitted). The district court granted qualified immunity to Officer Troche because Jessie failed to demonstrate that Officer Troche violated a clearly established constitutional right.

It is well established that deadly force may be used only if it is necessary to prevent the escape of a suspect and "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3. In *Acosta v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996), we held that an officer's use of deadly force violated the Fourth Amendment in circumstances similar to those present here. The defendant-officer was standing in front of the suspect's car "closer to the side than dead-center," *id*. at 1146, and the car was "moving or rolling very slowly from a standstill" as it approached him. *Id*. at 1147. We stated that the car was moving sufficiently slowly that the officer could have just stepped to the side, making his use of deadly force unreasonable. *Id*. at 1146. We recently affirmed *Acosta*'s holding, emphasizing that "an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away from him." *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020).

As long as Jessie's version of events is not "'blatantly contradicted by the record, so that no reasonable jury could believe it,' we must assume that a jury could find [Jessie's] account of what happened credible." *Id*. at 1171 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Under Jessie's version of the encounter, Pakman did not drive toward Officer Troche; Officer Troche shot into

6

the side or rear of the Civic, as it drove away from the lot and from him; and the Civic posed no threat to officer safety and, at best, a minimal threat to the public. Officer Troche stated at various points in his deposition there were virtually no other individuals in the vicinity or on the roads that evening: there was "very limited traffic on the road at that time," and "pretty much nobody out" on the roads, because it was 3:00 AM. "All I remember," he stated, is "the two of us." There were no indications that Pakman or Shawn were armed.

At the time of the incident, it was clearly established that officers are not entitled to qualified immunity for shooting at an individual in a fleeing vehicle that does not pose a danger to them or to the public. *Acosta*, 83 F.3d at 1146; *see also Adams v. Speers*, 473 F.3d 989, 992–93 (9th Cir. 2007); *Garner*, 47 U.S. at 3. Therefore, Officer Troche is not entitled to qualified immunity under Jessie's version of events, and we reverse the district court's grant of qualified immunity.

**3.** The district court erred by granting summary judgment on Jessie's state law wrongful death claim. Jessie argues that the district court erred by grouping his wrongful-death claim with the dismissal of his state-law assault and battery claims.[2] The district court dismissed the three claims together, citing to an unpublished Northern District of California case, which states: "the California

---

[2] To the extent Jessie argues that the district court erred in granting summary judgment in favor of defendants on his state-law battery and assault claims, Jessie has waived that argument by failing to raise it in the opening brief.

7

Court of Appeal has held that a determination that an officer's use of deadly force is objectively reasonable under § 1983 precludes negligence, assault, and battery claims." *Watkins v. City of San Jose*, No. 15-cv-5786, 2017 WL 1739159, at *20 (N.D. Cal. May 4, 2017). In making this statement, the court relied upon two decisions by the California Court of Appeal, one from 2004 and the other from 2009.

But, as Jessie correctly notes, the California Supreme Court has since clarified that similar language in other cases "can be misunderstood," and stated that "state negligence law . . . is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Hayes v. Cty. of San Diego*, 305 P.3d 252, 263 (Cal. 2013). California state negligence law "considers the totality of the circumstances surrounding any use of deadly force"; "the state and federal standards are not the same." *Id.*

Because the district court applied an outdated standard, we vacate the district court's grant of summary judgment to the defendants on Jessie's state wrongful-death claim and remand for further proceedings.

**REVERSED** and **REMANDED.**